IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

MICHAEL A. ADKINS, et al.,

        Plaintiffs,

v.                                      CIVIL ACTION NO. 3:08-1448

SUPERVALU, INC.,
and JAMES CUMMINGS,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court are Motions to Dismiss by Defendant James Cummings and Defendant SuperValu, Inc. [doc. nos. 4 and 7, respectively]. Also pending is Plaintiffs' Motion to Remand [doc. no. 11]. For the following reasons, the Court **GRANTS** Plaintiff's Motion to Remand and **DENIES** Defendants' Motions to Dismiss.

**I.**
**FACTS**

On December 1, 2008, Plaintiffs filed a Complaint against Defendants in the Circuit Court of Cabell County. In their Complaint, Plaintiffs allege that they all were employed by Defendant SuperValu, but they were laid off between July of 2004 and August 1, 2005.[1] At the time they were laid off, each Plaintiff was over 40 years old. Plaintiffs assert that, when they were laid

---

[1] The Complaint asserts that Michael Adkins was laid off on August 1, 2005, Steven Adkins was laid off on July 17, 2004, Robert Ashworth was laid off in December of 2004, Juan Auffant was laid off on December 31, 2004, Frederick Bledsoe was laid off on January 20, 2005, Danny Burns was laid off on December 31, 2004, Gary Nelson was laid off on December 30, 2004, Roger Noe was laid off on July 29, 2005, Craig Nottingham was laid off in January of 2005, and Jerry Pullen was laid of on December 30, 2004.

off, they each notified Defendant SuperValu that they "wanted to be re-hired in the event rehiring occurred." *Complaint*, at ¶¶ 15-24.  Plaintiffs claim that none of them were rehired, but in May of 2007, Defendant SuperValu began to hire new employees.  Plaintiffs claim that Defendant SuperValu's actions violated the West Virginia Human Rights Act's (WVHRA's) prohibition against age discrimination.  In addition, Plaintiffs specifically allege that Defendant James Cummings was Plaintiffs' supervisor and he "was involved either directly or indirectly in the decision not to rehire each of the Plaintiffs, by either making the final decision or by recommending the non hiring of each of the Plaintiffs, all of which was motivated to take said adverse action because of each of the Plaintiff's age." *Id*. at ¶ 30.

On December 24, 2008, Defendants timely removed this action to this Court based upon diversity of jurisdiction. *See* 28 U.S.C. §§ 1332, 1441, and 1446. In the Joint Notice of Removal, Defendants assert that Defendant Cummings was fraudulently joined as a defendant and, therefore, diversity exists despite the fact that he is a West Virginia resident and most Plaintiffs reside in West Virginia.[2]  In the alternative, Defendants assert that jurisdiction is proper under 28 U.S.C. § 1331 because Plaintiff's claims arise under Section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185.

---

[2]Plaintiff Bledsoe resides in Kentucky.

## II.
## DISCUSSION

### A.
### Fraudulent Joinder

In ruling on the pending motions, the Court recognizes that removal statutes must be strictly construed against removal. *See, e.g., Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994) ("Because removal jurisdiction raises significant federalism concerns, we must strictly construe removal jurisdiction" (citation omitted)); *Baisden v. Bayer Corp.*, 275 F. Supp.2d 759, 761 (S.D. W. Va. 2003). The party seeking removal bears the burden of demonstrating jurisdiction. *Sonoco Prods. Co. v. Physicians Health Plan, Inc.*, 338 F.3d 366, 370 (4th Cir. 2003) (citation omitted). With respect to Defendants' fraudulent joinder argument, the burden is particularly heavy. In meeting its burden with respect to demonstrating fraudulent joinder, Defendants "must show that the plaintiff cannot establish a claim against the nondiverse defendant even after resolving all issues of fact and law in the plaintiff's favor." *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232-33 (4th Cir. 1993) (citation omitted).[3] Defendants must demonstrate not just that the claim will not succeed, but that no possibility of a right to relief has been asserted. *Id.* at 233. In determining whether joinder is fraudulent, a court is "not bound by the allegations of the pleadings, but may instead consider the entire record, and determine the basis of joinder by any means available." *AIDS Counseling & Testing Ctrs. v. Group W Television, Inc.*, 903 F.2d 1000, 1004 (4th Cir. 1990) (internal quotation marks and citations omitted).

---

[3]Alternatively, removal jurisdiction could be demonstrated by a showing that there has been outright fraud in the plaintiff's pleading of jurisdictional facts. *Id*. at 233. Defendants have made no such allegation in this case.

Here, Defendants argue that Defendant Cummings' joinder is fraudulent because Plaintiffs' claims against him (and, for that matter, against Defendant SuperValu) are barred by the statute of limitations. Both Defendants have filed motions to dismiss on this ground. Curiously, although Plaintiffs have responded to other arguments made by Defendants, they have not responded to the statute of limitations argument. Nevertheless, for the following reasons, the Court finds that federal jurisdiction cannot be based upon this ground.

In West Virginia, an action brought under the WVHRA for age discrimination is subject to the two-year statute of limitation found in West Virginia Code § 55-2-12.[4] *McCourt v. Oneida Coal Co.*, 425 S.E.2d 602 (W. Va. 1992). Defendants assert Plaintiffs failed to file within the statute of limitations because they were laid off between July 17, 2004 and August 1, 2005 and did not file their Complaint until December 1, 2008. Therefore, Defendants argue the claims are time barred.

---

[4]West Virginia Code § 55-2-12 provides:

> Every personal action for which no limitation is otherwise prescribed shall be brought: (a) Within two years next after the right to bring the same shall have accrued, if it be for damage to property; (b) within two years next after the right to bring the same shall have accrued if it be for damages for personal injuries; and (c) within one year next after the right to bring the same shall have accrued if it be for any other matter of such nature that, in case a party die, it could not have been brought at common law by or against his personal representative.

W. Va. Code § 55-2-12.

In determining whether Plaintiffs' claims are barred, the Court must decide when did the statute of limitations began to run and, if it began to run over two years prior to the date the Complaint was filed, was the statute of limitations subject to waiver, equitable tolling or equitable estoppel. In *Independent Fire Co. No. 1 v. West Virginia Human Rights Commission*, 376 S.E.2d 612 (W. Va. 1988), the West Virginia Supreme Court addressed the statute of limitations issue. In that case, the complainant was indefinitely suspended from membership in a volunteer fire company on May 9, 1977. 376 S.E.2d at 613. The complainant believed the action was taken because he had endorsed a female for membership so he ultimately filed a complaint with the West Virginia Human Rights Commission on January 30, 1978. *Id*. The Commission agreed with the complainant and found that the fire company violated the WVHRA. *Id*. at 614. However, the fire company appealed and argued the Commission did not have jurisdiction because the Complaint was not filed within ninety days of the alleged discrimination as provided for in West Virginia Code § 5-11-10 (1971). *Id*.[5]

Upon certified question, the West Virginia Supreme Court first held that the statute of limitations for filing a complaint with the Human Rights Commission "is not jurisdictional in nature and is subject to waiver and equitable doctrines of tolling and estoppel." Syl. Pt. 1, *Independent Fire Co. No. 1*. Next, the Court addressed the issue of when the statute of limitations begins to run for filing an administrative complaint when someone is indefinitely suspended and

---

[5]The current version of West Virginia Code § 5-11-10 (1994) provides, in part, that [a]ny complaint filed pursuant to this article must be filed within three hundred sixty-five days after the alleged act of discrimination."

subsequently denied reinstatement. *Id*. at 616. Looking at federal decisions for guidance, the court found that "federal courts generally hold that the discharge notice must be definite or unequivocal before the time period for filing a charge with the EEOC begins to run." *Id*. at 617 (citations omitted). In addition, the court recognized that "[f]ederal courts are also in agreement that the failure to rehire after an alleged discriminatory discharge, absent an independent discrete act of discrimination, does not constitute a new or continuing violation of the civil rights laws." *Id.* To allow otherwise would permit plaintiffs to circumvent the statute of limitations by merely reapplying for employment. *Id*. (citations omitted). Following these principles, the court held that "[i]n cases alleging a discriminatory discharge from employment under W. Va. Code, 5-11-10, the time period for filing a complaint with the Human Rights Commission ordinarily begins to run on the date when the employer unequivocally notifies the employee of the termination decision." Syl. Pt. 2, *Independent Fire Co. No. 1*.

Applying this rule to the facts before it, the court found that the complainant was told that he was indefinitely suspended in May of 1977 and, thereafter, he was denied reinstatement on November 4, 1977. As the complainant was not *terminated* in May, the court determined that the statute of limitations did not begin to run until he was denied reinstatement in November. The court said that the facts can be viewed from two perspectives.

> First, it can be viewed as a discriminatory termination of membership, analogous to an employment discrimination case, where the termination does not become a completed act of discrimination until it becomes reasonably clear to the complainant that he has been, in fact, terminated. Second, the refusal to reinstate the complainant can be seen as a separate and distinct act of alleged discrimination which

      occurred within the then-existing limitation period.
      When viewed from either perspective, the complaint
      was timely filed with the HRC.

*Id*. at 618. The court further stated that, if the complainant was informed that he was expelled or terminated in May, then the limitation period would have began to run at that time. *Id*. at 617.

    Four years later in *McCourt*, the West Virginia Supreme Court applied the rule adopted in *Independent Fire Company No. 1* to the two year statute of limitations for filing an employment discrimination complaint under the WVHRA with the circuit court. In that case, the plaintiff took a voluntary lay-off in December of 1986. 425 S.E.2d at 604. The plaintiff stated she believed she would be recalled if she accepted the voluntary lay-off. *Id*. After learning that new employees were being hired, the plaintiff contacted the company in July of 1987, indicating that she would like to return to work. *Id*. On July 16, 1987, a company representative sent the plaintiff a letter stating that her layoff was permanent. *Id*. As it was by virtue of this letter that the company "unequivocally notified" the plaintiff she was terminated, the court determined the statute of limitations did not begin to run until the plaintiff would have reasonably received the letter. *Id.* at 607.[6]

    In considering the current Complaint, Plaintiffs allege in some paragraphs that they were "laid off" and wanted to be re-hired if rehiring occurred. *Complaint*, at ¶¶ 15-24. In other

---

[6]The court also held in Syllabus Point 2 that "[a] complainant who fails to file a complaint in a timely manner under the West Virginia Human Rights Act, unless the untimeliness is excused by waiver or estoppel, does not have the benefit of the alternative limitations period established by *W. Va. Code*, 5-11-13, for bringing an action in a circuit court of this State."

paragraphs of the Complaint, Plaintiffs state they were "discharged." *Id.* at ¶¶ 13, 14, 25, and 26. Based upon the Complaint, it simply is impossible at this point in the litigation to determine when Plaintiffs received unequivocal notice that their layoffs were permanent or they otherwise received notice they were discharged. Clearly, discovery will be necessary on this issue to make this determination. Additionally, even if the statute of limitations began to run when Plaintiffs received notice of their layoffs, it is uncertain at this point whether Plaintiffs have any grounds for which to argue that the period of limitation should be waived or equitably tolled or estopped.

The Court recognizes that "where the statute of limitations is difficult to determine, the doctrine of fraudulent joinder is not appropriate and the case should be remanded to state court." *Halkias v. The AXA Equitable Life Ins. Co.*, No. 2:05-CV-00438, 2006 WL 890620, at *2 (S.D. W. Va. 2006) (citations omitted). In other words, "successful fraudulent joinder/ statute of limitations arguments occur in cases where the issue is fairly easy to determine, either from the face of the complaint or with resort to limited additional evidence, while courts facing more ambiguous factual situations reject such arguments." *McGinty v. Player*, 396 F. Supp.2d 593, 598 (D. Md. 2005) (internal quotation marks and citation omitted). A "court should make only a limited piercing of the pleadings for fraudulent joinder in statute of limitations cases." *Id.* (internal quotation marks and citation omitted). The rationale behind this rule is to allow state courts to determine the status of non-diverse defendants. *Id.*

As the underlying facts surrounding Plaintiffs layoffs and/or discharges are yet unknown to the Court, the issue of fraudulent joinder is not fairly easily determined based upon the

-8-

face of the Complaint. Similarly, the Court is doubtful that the issue can be resolved by a limited piercing of the pleadings as it may ultimately involve interrogatories, depositions, and document exchanges. Under these circumstances, the Court believes the statute of limitations argument is one best resolved by the state court and, thus, the Court finds removal cannot be sustained upon this argument.

Defendants also argue that Plaintiffs have failed to set forth a prima facie case of employment discrimination under the WVHRA against either of them. In order to prove a prima facie case of discrimination, a plaintiff must establish by a preponderance of the evidence "(1) that the . . . [plaintiff] belongs to a protected group under the statute; (2) that he or she applied and was qualified for the position or opening; (3) that he or she was rejected despite his or her qualifications; and (4) that after the rejection, the . . . [defendant] continued to accept applications of similarly qualified persons." Syl. Pt. 3, *Shepherdstown Volunteer Fire Dept. v. State ex rel. State Human Rights Commission*, 309 S.E.2d 342 (W. Va. 1983). If a plaintiff makes such a showing, it creates a rebuttable presumption and the burden shifts to the defendant "to offer some legitimate and nondiscriminatory reasons for the rejection." *Id*. If the defendant is successful, then the plaintiff "has the opportunity to prove by a preponderance of the evidence that the reasons offered by the . . . [defendant] were merely a pretext for the unlawful discrimination." *Id.*

Defendants argue that Plaintiffs fail to meet the second criteria because they did not apply for a position or opening. Therefore, Defendants argue that Defendant Cummings is fraudulently joined as Plaintiffs have failed to state a viable claim against him, removal is proper,

and the case against both Defendants should be dismissed. The Court, however, disagrees. Paragraphs 15 through 24 identify each individual plaintiff and state that they each "notified the defendant, SuperValu, Inc. that . . . [they] wanted to be rehired in the event rehiring occurred." In addition, Plaintiffs allege that Defendant Cummings "was involved either directly or indirectly in the decision not to rehire each of the Plaintiffs, by either making the final decision or by recommending the non hiring of each of the Plaintiffs, all of which was motivated to take said adverse action because of each of the Plaintiff's age." *Complaint*, at ¶ 30. Again, at this early stage in the litigation, the Court is unaware of exactly what Plaintiffs specifically stated when they were laid off or discharged with respect to applying for positions in the future. However, the Court finds that Plaintiffs' assertions that they notified Defendant SuperValu that they wanted to be rehired and Defendant Cummings played a role in the decision not to rehire them is sufficient to survive a motion to dismiss.[7] Thus, the Court also determines that removal based upon fraudulent joinder of Defendant Cummings on this ground is improper.

## B.
## Preemption

In the alternative, Defendants argue that removal was proper based upon preemption under § 301 of the LMRA because it involves recall rights under the Collective Bargaining Agreement (CBA). Specifically, Defendants assert that the CBA gave Plaintiffs a two-year contractual right to be recalled and, once those rights expire, Defendant SuperValu had no duty to rehire or recall a former employee. In response, Plaintiffs contend they have not asserted any claim

---

[7]In doing so, the Court makes no determination as to whether or not Plaintiffs ultimately will be able to prove a prima facie case. The Court's ruling is specifically limited to whether the allegation, taken in the light most favorable to Plaintiffs, is sufficient to survive a motion to dismiss.

under the CBA, and they do not intend to do so. Plaintiffs insist that this action is not a "recall" case and, therefore, the CBA is not at issue. For the following reasons, the Court agrees with Plaintiffs.

On at least two occasions, this Court has ruled that an age discrimination claim under the WVHRA is not preempted by § 301. In *Harless v. CSX Hotels, Inc.*, 265 F. Supp.2d 640 (S.D. W. Va. 2003), *aff'd*, 389 F.3d 444 (4th Cir. 2004), the Court permitted the plaintiff to amend her complaint to assert claims for disability and age discrimination under the WVHRA despite the defendant's argument that the claims would be preempted by the CBA. 265 F. Supp.2d at 649-50. The Court noted that a claim under the WVHRA "presents purely factual questions about the underlying motivation and conduct of" the defendant. *Id*. at 649. The Court stated "the fact that the collective bargaining agreement may be referred to or consulted during the decision making process does not warrant a finding in favor of § 301 preemption." *Id. See also Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994) (stating "the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished" (citation omitted)); *Owen v. Carpenters' Dist. Council*, 161 F.3d 767, 775-76 (4th Cir. 1998) (ordering remand of wrongful discharge claim under Maryland law as an interpretation of the CBA was not required, although the defendant likely would assert the plaintiff was fired in compliance with the CBA's just cause provision).

Similarly, in *Adkins v. M & G Polymers USA, LLC*, No. 3:05-0052, 2006 WL 659501 (S.D. W. Va. 2006), this Court considered the § 301 preemption issue with respect to a disparate treatment and disparate impact claims. In *Adkins*, the plaintiffs alleged they were

-11-

permanently laid off because of their age in violation of the WVHRA. 2006 WL 659501, at *1. The plaintiffs made no mention of a CBA in their amended complaint, but the defendants removed the action based upon § 301 preemption. *Id.* In doing so, the defendants insisted that the CBA governed the layoff procedures. The plaintiffs moved to remand for lack of federal jurisdiction. *Id.* In part, the plaintiffs argued that their claims under the WVHRA were not preempted.[8] Citing *Harless*, inter alia, the Court agreed with the plaintiffs and found the plaintiffs "allege that the Defendants' conduct in permanently laying them off was motivated by their age. They do not claim that the Defendants failed to implement the layoff policy in accordance with the CBA." *Id.* at *6. Although the defendants may offer the provisions of the CBA as a nondiscriminatory reason for the layoffs, resolution of the plaintiffs' disparate treatment claim "will depend upon the motivation and conduct of Defendants in deciding to terminate their employment." *Id.* Thus, the Court found the claim was not preempted. Likewise, the Court found that the plaintiffs disparate impact claim was not preempted because a right to be free from both intentional and unintentional discrimination under state law exists independent of the CBA. *Id.* at * 9.

In light of these cases, it is clear that the present Complaint is not preempted by § 301. Plaintiffs have not alleged any claim under the CBA, rather they brought this action as an age discrimination case under the WVHRA. Even if Defendants raise the "recall" provisions of the CBA as a defense to the action, it is insufficient to invoke preemption. *See Price v. Goals Coal Co.*, 161 F.3d 3, at *8 (4th Cir. 1998) (unpublished) (stating "[t]he 'complete preemption exception' to the

---

[8]The plaintiffs also argued that there was no CBA in effect when they were laid off. The Court found, however, that they were working under an interim agreement when the layoffs occurred. *Id.* at *2.

'well-pleaded complaint' rule does not apply when the employer merely raises the collective bargaining agreement as a defense to the state law claim"). Plaintiffs are asserting rights under state law which are not so intertwined with the CBA to warrant preemption. Therefore, the Court finds it does not have federal jurisdiction under the LMRA.

## III.
## CONCLUSION

Accordingly, having found that federal jurisdiction does not exist on the basis of fraudulent joinder or preemption under § 301 of the LMRA, the Court **GRANTS** Plaintiffs' Motion to Remand [doc. no. 11] and **DENIES** Defendants' Motions to Dismiss [doc. nos. 4 and 7].

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER: July 9, 2009

_____
ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE